UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| LAURA J. ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-298 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff was not

entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  On

April 26, 2007, plaintiff filed her application for DIB benefits.  (A.R. 121).  She filed her application

for SSI benefits on September 19, 2008.  (A.R. 574).  Plaintiff alleged an October 14, 2005, onset

of disability.[1]  (A.R. 121, 228).  Her disability insured status expired on December 31, 2010.  Thus,

it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she

was disabled on or before December 31, 2010.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.

1990).

---

[1]Plaintiff listed October 1, 2004, as the alleged onset of disability date in her application for
SSI benefits (A.R. 574), but it was ineffectual because SSI benefits are not awarded retroactively
for months prior to the application for benefits.  20 C.F.R. § 416.335;  *see Kelley v. Commissioner*,
566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502,
504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the
application for SSI benefits is filed.  Thus, October 2008, is plaintiff's earliest possible entitlement
to SSI benefits.  (A.R. 27-34).

Plaintiff's claims were denied on initial review.[2]   On October 6, 2011, plaintiff received a hearing before an ALJ, at which she was represented by counsel.  (A.R. 590-651).  On January 12, 2012, the ALJ issued her decision finding that plaintiff was not disabled.  (A.R. 12-23).  On January 31, 2013, the Appeals Council denied review (A.R. 2-4), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision.  She argues that the Commissioner's decision should be overturned on the following grounds:

1.   The ALJ violated the treating physician rule in the weight he gave to the opinions of Louis Praamsma, M.D., and J. Eric Zimmerman, M.D.;

2.   The ALJ gave improper weight to non-examining source opinions; and

3.   The ALJ's factual finding regarding plaintiff's RFC and the hypothetical question posed to the vocational expert failed to accurately portray plaintiff's physical impairments.[3]

(Plf. Brief at 4, 11, 12,  docket # 12).  I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,

---

[2]On June 10, 2011, the Appeals Council entered an order vacating an earlier decision by a different ALJ.  (*see* A.R. 65-66).  No discussion of the vacated decision (A.R. 27-34) is necessary.

[3]Plaintiff's brief does not contain the statement of errors required by the court's order establishing the briefing schedule.  (docket # 9).  The paragraph headings of her brief have been indulgently considered as her statement of errors on appeal.

125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from October 14, 2005, through December 31, 2010, but not thereafter. (A.R. 14). Plaintiff had not engaged in substantial gainful activity on or after October 14, 2005. (A.R. 14). Plaintiff had the following severe impairments: "degenerative disc disease, depression, anxiety, posttraumatic stress disorder, left shoulder pain, bilateral carpal tunnel syndrome, and sleep apnea." (A.R. 14). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 15). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, unskilled, routine, and repetitive light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant requires a sit/stand option while remaining at the workstation, meaning the claimant could sit or stand at will while performing the assigned job duties. The claimant can stand for up to fifteen minutes at a time and/or walk for up to fifteen minutes at a time, with normal breaks, for a total of two hours in an eight-hour workday. She can sit for up to thirty minutes at a time, with normal breaks, for a total of six hours out of an eight-hour workday. Her ability to push and pull with her bilateral upper and lower extremities is reduced to frequent. Her gross and fine manipulation bilaterally and left overhead reaching is reduced to frequent. She should avoid concentrated exposure to extreme temperatures, hazards, and vibrations. She can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She should be allowed to ambulate with a cane. She should not work in close proximity to co-workers, meaning the claimant could not function as a member of a team, as well as no direct contact with the public. This work should be non-production paced and low stress, meaning only occasional changes in the work and occasional decision making.

(A.R. 17). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> [The claimant] has an inconsistent work history and currently lives with her teenage daughter. At the hearing, the claimant asserted that she is unable to work due to pain throughout her body, from her head into her lower extremities. She also reported numbness in her extremities and difficulty sleeping. Additionally, the claimant testified that she

experiences auditory and visual hallucinations, and at least two panic attacks per day. She testified that she is afraid to leave her home and is unable to be around more than one or two other people at a time. Furthermore, she stated that she is unable to sit longer than five minutes, walk more than fifty feet, or lift a gallon of milk.

* * *

In assessing the claimant's credibility, the undersigned notes that the claimant's allegations of extreme limitations are not consistent with the longitudinal medical evidence of record. The claimant testified that she has difficulty performing all activities of daily living, including walking and dressing herself. However, imaging studies of the claimant's spine revealed only mild degenerative changes (17F/2). Furthermore, the claimant reported that she was able to dress herself, prepare meals, wash dishes, and spend time with her grandchild (7E). The record also indicates that the claimant was caring for three teenagers at one point during the alleged period of disability, which can be quite demanding both physically and mentally (6E, 2F/10). The claimant also testified that she worked as a volunteer for several months during the alleged period of disability. Although she did not perform this volunteer work on a full time basis, this volunteer work is inconsistent with the extreme restrictions she alleged at the hearing. As for her mental impairments, the claimant testified that she is afraid to leave the house and has panic attacks if she is around one or two other people, even if she knows the individuals. However, the record notes that in September 2011 the claimant injured herself while attending a bonfire with friends (25F/13). She also testified that she was able to read to children as part of her volunteer work.

The undersigned also notes that the claimant has issued inconsistent statements regarding her conditions. In June 2011, she reported that she has been experiencing auditory and visual hallucinations for approximately nine years (23F/2). However, in October 2011, she reported experiencing hallucinations since she was eighteen years old (25F/6). During another counseling session, the claimant reported that the hallucinations started when she lost her job in 2005 (23F/6). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information she provided may not be entirely reliable. Additionally, at the hearing the claimant asserted that her medications provide no relief from her symptoms. Yet she testified that she continues to take the medications, despite the fact that they allegedly cause fatigue.

* * *

In sum, the above residual functional capacity is supported by the substantial medical evidence of record. Although the evidence establishes underlying medical conditions capable of producing some pain or other limitations, substantial evidence of record does not confirm disabling pain or other limitations arising from those impairments[.]

(A.R. 17-21). Plaintiff was unable to perform any past relevant work. (A.R. 21). Plaintiff was 43-years-old as of her alleged onset of disability, 46-years-old when she filed her application for SSI benefits, 48-years-old as of her date last disability insured, and 49-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, she was classified as a younger individual. (A.R. 21). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 21). The ALJ found that the transferability of jobs skills was not material to a determination of disability. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the VE testified that there were approximately 18,900 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 642-44). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 22-23).

## 1.

Plaintiff argues that the ALJ committed reversible error in her application of the treating physician rule to the opinions of Doctors Praamsma and Zimmerman. (Plf. Brief at 4-11; Reply Brief at 1-3, docket # 17). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of

disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[4] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

---

[4]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even in circumstances in which a treating source's medical opinion is not given controlling weight, the opinion should not necessarily be completely rejected. The weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

A. Doctor Zimmerman

Plaintiff's argument with regard to Dr. Zimmerman's opinion under the "treating physician rule" is not a model of clarity. Zimmerman was not a treating physician. (A.R. 18). He conducted a single examination on December 12, 2005, for the purpose of determining whether plaintiff was a surgical candidate. (A.R. 365-66). Plaintiff concedes this point: "Dr. Zimmerman's involvement with this patient was only temporary by its nature and therefore he could not speak as

to her long term care. He saw her only one time back in 2005 and did not see her again." (Plf. Brief at 9). A single visit does not suffice to establish a treating physician relationship. *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

On December 12, 2005, Dr. Zimmerman found that plaintiff was not a surgical candidate because she had a "purely myofascial injury." Plaintiff's MRI showed "no evidence of nerve root compression." (A.R. 366). Dr. Zimmerman indicated that plaintiff should not return to work at "Four Wynns [sic] moving boats"[5] until she could do so without an increase in her symptomatology. (A.R. 365-66). Zimmerman's letter to Dr. Praamsma concludes as follows: " I have put her off work for another month so she can get back into your care and I will drop out of the care picture now." (A.R. 366). Plaintiff contends that the ALJ misinterpreted this statement. (Plf. Brief at 9-10). This argument cannot withstand scrutiny. The ALJ understood the precise context in which Dr. Zimmerman had offered his opinion. The ALJ explained why Zimmerman's opinion about keeping plaintiff "off work" was entitled to little weight: "[Zimmerman] suggested that she remain off work for one month. The undersigned gives little weight to this opinion, as the restrictions were temporary." (A.R. 20) (citation omitted).

_____

[5]Plaintiff worked as a canvas assembler, which involved "[a]ssembling the canvas, which is the roofing for boats, and then snapping the carpets that go on the floor of the boats and having to haul them out to the lines where the boats are being made." (A.R. 597). She reported that her work at "Four Winns Boats" (A.R. 141) involved frequent lifting of "50 pounds or more" and could involve lifting up to 80 pounds. (A.R. 156, 158-59). The vocational expert classified this work as work at the heavy exertional level as plaintiff performed it and as medium work as generally performed in the national economy. (A.R. 231, 641-42). Plaintiff stated that she injured her back at work and received short-term and long-term disability benefits through her employer. (A.R. 597-98).

B.    Doctor Praamsma

Dr. Praamsma was plaintiff's treating physician at Great Lakes Family Care. He stated on a number of occasions that he was keeping plaintiff "off work" at Four Winns. (A.R. 286, 289, 294, 305, 394, 399, 408, 429). At other times, he stated that plaintiff was limited to "clerical" work. (A.R. 368, 403, 471). He made statements that plaintiff was "unable to work" (A.R. 508-510) and offered his opinion regarding plaintiff's RFC (A.R. 386-88). Dr. Praamsma's opinions on the issues disability and RFC were not entitled to any particular weight because those issues are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *see Allen v. Commissioner*, 561 F.3d at 652; *see also Curler v. Commissioner*, 561 F. App'x 464, 472 (6th Cir. 2014). The ALJ found that the opinions provided by Dr. Praamsma were not persuasive:

> As for the opinion evidence, Louis Praamsma, M.D., the claimant's primary medical provider, issued multiple opinions regarding the claimant's imitations. Dr. Praamsma issued several opinions stating that the claimant was unable to return to work (see generally 4F, 21F, 16F). In June 2009, he issued an opinion stating that the claimant could perform clerical work for two hours per day with no lifting (16F/19, 13F/2). In September 2009, Dr. Praamsma issued an opinion stating that since 2005, the claimant was unable to lift five pounds or sit, stand, or walk longer than 15 minutes due to pain (16F/2). He stated that the claimant could perform occasional pushing, pulling, grasping, and fine manipulation bilaterally (16F/3). He opined that she could never perform postural activities and should avoid exposure to all environmental restrictions [sic]. In July 2011, Dr. Praamsma opined that the claimant was unable to work any job or lift any weight (22F). The undersigned gives little weight to these opinions, as they are not consistent with the mild objective findings in the record. Dr. Praamsma's opinion that the claimant is unable to walk longer than 15 minutes is inconsistent with the claimant's reported ability to walk for up to 30 minutes (16F/2, 7E). Additionally, Dr. Praamsma's opinion the claimant is unable to sit, stand, or walk for more than forty-five minutes combined during an eight-hour workday is inconsistent with his own opinion limiting the claimant to two hours of clerical work per day (16F/2, 13F/2). His opinion that the claimant is incapable of any work is also inconsistent with his opinion that the claimant is capable of performing clerical work (13F/2, 21F, 22F). The medical evidence of record, including three nearly identical MRIs ranging from October 2005 until September 2011, does not support these contradictory opinions.

(A.R. 19-20).  The objective medical evidence in the record did not support the extreme restrictions suggested by Dr. Praamsma.  Plaintiff had "mild" degenerative disc disease at a few levels in her lumbar spine.  (A.R. 327-28, 365, 371-72, 490-91).  Plaintiff's EMG test returned generally normal results.  There was some evidence of "mild" bilateral carpal tunnel syndrome.  There was no evidence of "axillary, suprascapular, spinal accessory or other mononeuropathy about the left shoulder, additional mononeuropathy in the left upper extremity, brachial plexopathy, cervical radiculopathy, myositis or other superimposed lower-motor neuron or primary muscle disorder in the areas searched[.]"  (A.R. 382).

Plaintiff makes a convoluted argument that "MRIs cannot reveal every known source of chronic back pain," and that the ALJ should have recontacted Dr. Praamsma "to obtain clarification" concerning plaintiff's fibromyalgia.  (Plf. Brief at 8-9).  It was plaintiff's burden to present evidence establishing that she was disabled.  *Casey v. Secretary of Health & Human Servs*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  The word "fibro" appears on a Baldwin Family Health Care bill dated June 22, 2011.  (A.R. 507).  There is no discussion of fibromyalgia in Dr. Praamsma's treatments notes.  The notes contain no observations made by the physician discussing  "trigger points," much less eliciting responses from plaintiff which would support a diagnosis of fibromyalgia.[6]  (A.R. 255-

---

[6]In *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs."  *Id.* at 243.  "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials.  *Id.* at 244.  "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and -- the only symptom that discriminates between it and other diseases of a rheumatic character --  multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."  *Huffaker v.*

310, 367-68, 390-426, 430-34, 439-89). It is evident from the hearing transcript that plaintiff's attorney was aware that this record did not contain observations made by Dr. Praamsma which could support a diagnosis of fibromyalgia:

> ALJ: Okay. . . . [T]he fibromyalgia, all I saw was one single sheet with the word fibro written on it. Do we have anything more than that, Mr. Hubbell?
>
> A    No, Your Honor.
>
> ALJ: Okay.
>
> BY ADMINISTRATIVE LAW JUDGE:
>
> Q    Have you been to a rheumatologist?
>
> A    No ma'am.[7]

(A.R. 608).

Plaintiff argues that the ALJ was required to recontact Dr. Praamsma "to obtain additional information." (Plf. Brief 9). In *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger SSR 96-5p's

---

*Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n. 2 (6th Cir. 2008); *accord Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2p (S.S.A. July 25, 2012) (reprinted at 2012 WL 3104869, at * 3) (effective July 25, 2012). "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankowski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits."). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012) (same).

[7]Rheumatology is the relevant specialty for evaluating fibromyalgia. *See Rogers v. Commissioner*, 486 F.3d at 245; *see also Miller v. Commissioner*, No. 1:12-cv-150, 2014 WL 4187664, at * 8 (W.D. Mich. Aug. 21, 2014); *Solomon v. Colvin*, No. 13-5121, 2014 WL 741548, at * 5 (C.D. Cal. Feb. 25, 2014).

duty to recontact:[8] the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record." *Id.* at 273. An unsupported opinion alone does not trigger the duty to recontact. *Ferguson*, 628 F.3d at 273. SSR 96-5p's duty is not triggered where, as here, the ALJ did not reject the physician's opinions because they were unclear to her, but instead she rejected the opinions because they were based on plaintiff's subjective complaints were not supported by the other evidence of record. *Ferguson*, 628 F.3d at 273. "'[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.' " *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)). Where the duty is not triggered, it is not violated. *Ferguson*, 628 F.3d at 274.

**2.**

Plaintiff's brief contains a one-paragraph argument which mentions two care providers at Northern Lakes Community Mental Health (NLCMH), Psychiatrist Scott Monteith, M.D., and Therapist Judee Maxwell:

---

[8]Plaintiff cites "20 CFR § 416.1512(e)" for the proposition that the ALJ was required to recontact Dr. Praamsma. (Plf. Brief at 9). No such regulation currently exists or previously existed. It is assumed for present purposes that plaintiff intended to cite 20 C.F.R. § 404.1512(e) and 20 C.F.R. § 416.912(e), former regulations which "recogniz[ed] a duty to recontact in cases where the evidence from the treating physician [was] inadequate to determine disability and contain[ed] a conflict or ambiguity requiring clarification." *Ferguson*, 628 F.3d at 273 n.2. The regulations were revised effective March 26, 2012, and are currently codified at 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). The revised regulations clarify that the ALJ has "discretion, not a duty, to re-contact a medical source." *Jones v. Colvin*, No. 2:12-cv-3605, 2014 WL 1046003, at * 11 (N.D. Ala. March 14, 2014).

> Other opinions the ALJ granted only little weight to were that of Scott Monteith, M.D., an evaluating psychiatrist, and Judee Maxwell, L.L.P., the plaintiff's therapist. The ALJ gave little weight to these opinions on the ground that they were based on the plaintiff's allegations of hallucinations, panic attacks and agoraphobia as of June 2011." (Tr. 20). However, when specifically asked by the ALJ how long she had been having these, the plaintiff testified at the hearing that she has had them since she was "18 years old." (Tr. 625). The ALJ determined that this was "inconsistent with her behavior and allegations prior to that date" (Tr. 20). Yet the plaintiff repeatedly testified at the hearing that she had been somewhat reserved about reporting it in the past out of fear of losing her children and that she was denied treatment when she did seek help because she did not display any suicidal ideations at that time. (Tr. 612-14, 622-26).

(Plf. Brief at 10). The above-quoted argument is deemed waived. It is waived because it was not included in plaintiff's statement of errors. *See Nichols v. Commissioner*, No. 1:12-cv-995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug. 28, 2014) (collecting cases). Further, it is waived because there is no developed argument supported by legal authority. Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see Moore v. Commissioner*, 573 F. App'x 540, 543 (6th Cir. 2014); *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

Even assuming that plaintiff did not waive the issue, it is meritless. Plaintiff had no history of significant mental health care at any time before her disability insured status expired on December 31, 2010. Her earliest records from NLCMH[9] are dated June 2011. (A.R. 503-05, 511-17). Therapist Judee Maxwell conducted plaintiff's intake assessment at NLCMH on June 7, 2011 (A.R. 511-17), two planning meetings in August 2011 (A.R. 545-46), and one therapy session on September 15, 2011 (A.R. 541-42). During the intake assessment on June 7, 2011, plaintiff reported that she was experiencing panic attacks, anxiety, and visual and auditory hallucinations. She

---

[9]The majority of the records from NLCMH document canceled appointments, appointments that plaintiff failed to attend, or unsuccessful attempts to contact plaintiff by telephone. (A.R. 530, 532, 538-40, 547-53, 555-58).

claimed that this had been "going on for years," but she "didn't want to tell anyone." (A.R. 511). She reported that she "went to the hospital one time in Detroit in the 1980's. They evaluated her and sent her home." (A.R. 511). She denied homicidal or suicidal ideation. (A.R. 513). When plaintiff was asked about any substance abuse history, her response was that she smoked cigarettes to relieve emotional distress. (A.R. 514). Plaintiff reported that she did not have any friends. Judee Maxwell found that plaintiff's general mental status was "unremarkable." She was oriented in all three spheres. Her intellect appeared to be average or above average. (A.R. 512). On the basis of plaintiff's responses during the intake interview, Maxwell offered a diagnosis of post-traumatic stress disorder, major depressive disorder, recurrent, severe with psychotic features, and a panic disorder without agoraphobia. She gave plaintiff a global assessment of functioning (GAF) score of 42. During the therapy session on September 15, 2011, plaintiff reported that "[s]he had gone out with friends, and ended up tripping and landing in the [bon]fire." (A.R. 541). Judee Maxwell once again recorded plaintiff's statements that she was experiencing auditory and visual hallucinations. Maxwell found that plaintiff was oriented in all three spheres. Her mood was dysphoric and anxious. Her speech pattern was normal and her hygiene and grooming were good. Her operational judgment was grossly intact. Maxwell and plaintiff discussed scheduling plaintiff's appointment with a psychiatrist. (A.R. 541-42).

On October 5, 2011, Psychiatrist Scott Montieth conducted his consultative examination. (A.R. 534-37). Monteith noted that plaintiff had no history of inpatient psychiatric treatment. (A.R. 535). She had no history of special education. Her cognitive functions, including operational judgment, were grossly intact. (A.R. 535). Her blood work was normal with the exception of the alcohol shown in her system. "She had alcohol in her system which is consistent

-15-

with what she reported historically and she went to the hospital because of the ongoing symptoms of psychosis and drinking behavior.  An emergency room report from 7/2/2011 indicated acute alcohol intoxication,[10] peripheral tingling resolved, acute cephalgia, resolved, atypical chest pain." (A.R. 536).  The MRI of plaintiff's brain returned normal results. (A.R. 536, 573).  Dr. Monteith recommended that plaintiff "abstain from alcohol and illicit drugs."  (A.R. 536).  He prescribed Abilify and continued plaintiff's Klonopin prescription and recommended that plaintiff attend therapy sessions.  (A.R. 536).  He gave plaintiff a GAF score of 48.  (A.R. 536).  Plaintiff did not identify any specific opinion expressed by Montieth or Maxwell which failed to receive appropriate weight.

The ALJ logically assumed that the opinions to which plaintiff is alluding in her brief were the low GAF scores provided by Montieth and Maxwell.  The ALJ correctly noted that GAF scores are subjective rather than objective assessments, and they are not entitled to any particular weight.  "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009).  A GAF score is a subjective rather than an objective assessment.  *Id.*  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC,

---

[10]Hospital records dated July 2, 2011, were not included in the medical records that plaintiff filed in support of her claims for DIB and SSI benefits.  Similarly, plaintiff did not submit the records from her emergency room visit on September 10, 2011, stemming from the bonfire incident, even though the ALJ specifically asked her attorney to produce them.  (A.R. 630-31).  During a follow-up examination at the hospital on September 19, 2011, plaintiff stated that she rarely used alcohol.  (A.R. 570).  She told Brian Heeringa, M.D., the treating physician who performed a skin graft, that she "never" used alcohol, and that "when she went to get out of her chair she lost her balance and fell into the fire and burned her [left] forearm[.]"  (A.R. 522, 528).

but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky v. Commissioner*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006).   The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."[11]  *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).  "Significantly, the SSA has refused to endorse the use of the GAF scale."  *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).

       The ALJ explained that he gave little weight to the GAF scores because plaintiff's "recent allegations of hallucinations and severe panic attacks [were] inconsistent with her behavior and allegations prior to that date, and [were] not indicative of the claimant's condition throughout her alleged period of disability."  (A.R. 20).  The ALJ questioned plaintiff at length regarding the inconsistency between what her contemporaneous records showed regarding her mental impairments and her assertions in 2011 that she had suffered significant mental impairments on a long-term basis.

---

[11]"[T]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale."  *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at * 8 (N.D. Ohio Aug. 21, 2014); *see Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at * 23 n. 9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool."). " 'It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice.' " *Brown v. Colvin*, No. 12-513, 2013 WL 6039018, at * 7 n. 3 (E.D. Wash. Nov.14, 2013) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed., 2013)); *see Anderson v. Colvin*, No. 13-C-788, 2014 WL 5430275, at * 2 n.6 (E.D. Wisc. Oct. 24, 2014).  "Moreover, a GAF score reflected an individual's functioning at a particular moment in time; one score was generally not helpful in determining whether Plaintiff's alleged impairment lasted at least 12 months, as is required to be considered disabled. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a)." *Davis v. Commissioner*, 2014 WL 4182737, at * 8.

(A.R. 612-14, 624-27). The ALJ made the following observations in her opinion: "Beginning in June 2011, the claimant reported having panic attacks and hallucinations (23F/1). At the hearing, the claimant asserted that these issues have been present since 2005, but she was afraid to discuss them with her medical providers. Prior to June 2011, the claimant never reported significant problems with panic attacks or hallucinations." (A.R. 18). The ALJ found that plaintiff's activities such as attending a bonfire with friends and her volunteer work were inconsistent with the extreme limitations she claimed. (A.R. 19). The ALJ observed that plaintiff gave inconsistent statements regarding the date her auditory and visual hallucinations that she first reported in mid-2011 began. Plaintiff's inconsistent statements asserting that her panic attacks and hallucinations began in 1980, 2002, or 2005, undermined the ALJ's confidence in the reliability of her statements. (A.R. 19). The ALJ was not required to accept plaintiff's after-the-fact explanation. She found that plaintiff's testimony claiming that she had hidden her mental impairments for many years was not credible.

Plaintiff's reply brief clarified that she was not claiming error in the weight the ALJ gave to the GAF scores, but again she failed to identify any specific opinion offered by Monteith or Maxwell which failed to receive appropriate weight:

> Plaintiff is not arguing GAF scores. Rather, the ALJ's Decision mentions the GAF scores at Tr. 20. The ALJ identifying minor inconsistencies to discredit the long-term treating family physician's opinion and giving great weight to a non-examining program physician over the treating psychiatrist and counselor, follow a clear pattern of a Decision which lacks substantial evidence.

(Reply Brief at 3). Plaintiff's unsupported argument does nothing to undermine the ALJ's decision. The ALJ documented major holes in plaintiff's attempts to explain-away her failure to report hallucinations and panic attacks. Plaintiff did not have a "treating psychiatrist." Plaintiff conceded this point in her initial brief: "Scott Monteith, M.D., an evaluating psychiatrist." (Plf. Brief at 10).

Psychiatrist Monteith conducted his consultative examination October 5, 2011.  (A.R. 20; *see* A.R.

534-37).  A single visit does not suffice to establish a treating psychiatrist relationship.  *Kornecky*

*v. Commissioner*, 167 F. App'x at 506.  "Indeed, depending on the circumstances and the nature of

the alleged condition, two or three visits often will not suffice for an ongoing treatment

relationship."  *Id.* at 506-07.  Because Dr. Monteith was not a treating psychiatrist, the ALJ was not

"under any special obligation to defer to his opinion[s] or to explain why he elected not to defer to

[them]."  *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v.*

*Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014).  Nonetheless, the ALJ carefully considered

Dr. Monteith's opinions and found that they were not persuasive.   The ALJ is responsible for

weighing conflicting medical opinions, not the court.  *Buxton*, 246 F.3d at 775; *accord Barnett ex*

*rel. D. B. v. Commissioner*, 573 F. App'x 461, 464 (6th Cir. 2014); *White v. Commissioner*, 572 F.3d

at 284.

### 3.

Plaintiff argues that the ALJ gave "improper weight to non-examining source

opinions."  (Plf. Brief at 11).

### A.   Psychologist Findley

It is not clear why plaintiff included Psychologist James Findley in the section of her

brief in which she argues that the ALJ "gave improper weight to non-examining sources."  (Plf.

Brief at 11).  It is pellucid that Psychologist Findley was an examining source.  (A.R. 341-45).

Plaintiff concedes this point.  She refers to Findley as "an examining source."  (Plf. Brief at 12).  Her

argument with regard to Psychologist Findley is cryptic.  She criticizes Findley for not addressing

her physical limitations.  (*Id.*).  However, the psychologist did consider her physical limitations to

the extent that they were relevant to the mental status examination that he was conducting.  (A.R. 341-45).  Plaintiff states, without benefit of any supporting legal authority, that it  "would not be proper" to give weight to any observation by Findley regarding her physical limitations, because he is not an expert "proficient in that field of medicine to form a reliable opinion on the subject matter." (Plf. Brief at 12).  The ALJ never relied on Psychologist Findley's opinions to establish plaintiff's exertional or postural limitations.  As a licensed psychologist, Findley was an expert proficient in the field of evaluating an individual's mental impairments.

On July 31, 2007, Psychologist Findley conducted a mental status examination. (A.R. 341).  Plaintiff "drove herself to the office and arrived a few minutes late for her appointment[.]" (A.R. 343).  She "denied any history of psychiatric hospitalizations or other mental health treatment."  (A.R. 342).  She denied any history of mental illness, substance abuse or criminality.

Psychologist Findley described plaintiff as "a tall, moderately obese woman, who was dressed appropriately and appeared to have adequate personal grooming and hygiene.  She rose from her chair and walked with some difficulty, consistent with lower back pain.  She complained of back pain and headache during the interview.  She became tearful almost immediately.  Her speech was clear and articulate." (A.R. 343).  Plaintiff was generally pleasant and cooperative.  Her stream of mental activity and thought content were "unremarkable." (A.R. 343).  Plaintiff was oriented in all three spheres.  She reported symptoms of anxiety and extreme moodiness.  Psychologist Findley offered a diagnosis of an adjustment disorder with mild anxiety and depressed mood and gave plaintiff a GAF score of 55.  (A.R. 344).  The ALJ found that the opinions Psychologist Findley expressed were persuasive and entitled to great weight because they were consistent with the

medical evidence of record for the majority of the alleged period of disability and with the claimant's lack of consistent counseling and her apparent ability to perform volunteer work. (A.R. 20).

        B.    <u>Psychologist Marshall</u>

Plaintiff levels the same criticism against a non-examining psychologist, Ron Marshall. She argues that Marshall lacked adequate expertise to evaluate her physical impairments. (Plf. Brief at 11-12). Psychologist Marshall did not purport to evaluate plaintiff's exertional or postural limitations. The psychologist did review plaintiff's records, however, and he determined that plaintiff's mental impairments did not approach listing-level severity. (A.R. 346-64). Marshall offered his opinion that plaintiff "may work better with minimal contact with the public" and retained the ability to perform rote tasks on a sustained basis. (A.R. 363). The ALJ found that Psychologist Marshall's opinion was persuasive and "consistent with the claimant's reported ability to follow instructions, read, and handle her personal finances (7E). It [was] also consistent with the lack of consistent counseling throughout the majority of the claimant's alleged period of disability." (A.R. 20). The ALJ's factual finding regarding plaintiff's RFC included significant functional restrictions stemming plaintiff's severe mental impairments of depression, anxiety, and post-traumatic stress disorder. (A.R. 17). The ALJ did not commit error in the weight she elected to give Psychologist Marshall's opinion. *See White*, 572 F.3d at 284; *Buxton*, 246 F.3d at 775.

**4.**

Plaintiff argues that the ALJ's factual finding regarding her RFC failed to "accurately portray" her physical impairments. (Plf. Brief at 12-14; Reply Brief at 4). RFC is an administrative

finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1); *Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013);

*Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ found that plaintiff

retained the RFC for a limited range of light work. (A.R. 17). Substantial evidence is defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's RFC is

supported by more than substantial evidence.

### 5.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence

because the hypothetical question posed to the VE failed to take all her functional limitations into

account. (Plf. Brief at 12-14). A hypothetical question is not required to list the claimant's medical

conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368

F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's testimony was not fully credible. It

is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See*

*Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1235; *see also Parks v. Social Security*

*Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [ ] need only incorporate

those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x

429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to

a vocational expert and is required to incorporate only those limitations accepted as credible by the

finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to

the VE was accurate and the VE's testimony in response provided substantial evidence supporting the ALJ's decision.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   November 12, 2014                    /s/  Phillip J. Green
                                              United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).